# United States Court of Appeals
## For the First Circuit

---

No. 98-1916

CLEMENTE FEBRES, A/K/A CLEMENTE FEBRES-MORALES, ET AL.,

Plaintiffs, Appellants,

v.

CHALLENGER CARIBBEAN CORPORATION,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

---

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Boudin, Circuit Judge.

---

Juan Rafael Gonzalez Muñoz, with whom José Luis Gonzalez Castañer was on brief, for appellants.
Graciela J. Belaval, with whom Martinez, Odell & Calabria was on brief, for appellee.

---

June 8, 2000

---

**SELYA, Circuit Judge.** Ever since Justice O'Connor highlighted the importance of direct evidence of discrimination, see Price Waterhouse v. Hopkins, 490 U.S. 228, 276-77 (1989) (O'Connor, J., concurring), courts have struggled to determine whether particular pieces of evidence can be so classified. Following the passage of the Civil Rights Act of 1991, Pub. L. No. 102-166, § 102, 105 Stat. 1071, 1073 (codified at 42 U.S.C. § 1981a(c)(1)), this struggle took on an added dimension: the Act made jury trials widely available in discrimination cases, thus sparking interest in how juries were to be instructed when direct evidence of discrimination had been introduced. We have approached these subjects cautiously, eschewing broad generalizations. See, e.g., Fernandes v. Costa Bros. Masonry, 199 F.3d 572, 581-83 (1st Cir. 1999). This appeal requires us to take an incremental step along the decisional path.

## I. BACKGROUND

On February 1, 1994, Thomas & Betts Corporation (Thomas) acquired the assets of Challenger Caribbean Corporation (CCC), a manufacturer of circuit breakers and switches.[1] Thomas decided to shut down CCC's production line at Canóvanas and transfer the work to a Vega Baja facility operated by Thomas & Betts Caribe, Inc. (Caribe). One virtue of this consolidation

---

[1]CCC is now known as Thomas & Betts Puerto Rico, Inc.

-3-

was the opportunity to downsize.  Thomas placed a trio of executives — Frank Domenech (the manager of the Vega Baja plant), Ojel Rodríguez (his Canóvanas counterpart), and Ramón Becker (Caribe's human resources director) — in charge of deciding which CCC employees were to be transferred and which were to be shown the door.  The triumvirate met several times to determine the employees' fate.

On December 2, 1994, Domenech announced the closing of the Canóvanas plant.  He also disclosed that slightly less than half of CCC's administrative employees (17 out of 36) would be transferred to Vega Baja.  The nine appellants — Michael Dalmau (age 47), Clemente Febres (age 53), Rafael Hiraldo (age 46), Carmen López (age 41), Jesús Ortiz (age 64), José Pomales (age 54), Emma Rovira (age 43), Gloria Soto (age 47), and Luis Zayas (age 62) — were not part of that 17-member complement.

Invoking the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, the appellants sued.  CCC defended on the ground that its decisions were based on legitimate, age-neutral criteria.  Following a lengthy trial, the jury returned a verdict in CCC's favor.

The evidence at trial was a mixed bag, some favoring the appellants and some favoring CCC.  Citing book and verse would for the most part serve no useful purpose.  The sole

-4-

exception concerns Becker's testimony that, as the triumvirs began mulling transfer decisions, Domenech advised him privately that three criteria were used to determine which employees would be moved to Vega Baja:  job performance, union identification, and "in some cases, the age."  The critical questions raised by this appeal concern the character of this bit of testimony and the jury instructions related to it.  We shall return to those questions shortly.  At this juncture, however, we pause to offer a quick primer on the effect of direct evidence in a discrimination case.

## II.  THE LEGAL LANDSCAPE

A plaintiff alleging disparate treatment under a statute like the ADEA usually proceeds by means of the familiar framework engendered in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  We have described the mechanics of this approach (customarily called the "pretext" approach) in considerable detail, see, e.g., Fernandes, 199 F.3d at 579-81; Mesnick v. General Elec. Co., 950 F.2d 816, 823-24 (1st Cir. 1991), and need not elaborate upon it here.  What is significant for present purposes is that, under pretext analysis, the burden of persuasion remains with the plaintiff throughout the case. See Fernandes, 199 F.3d at 581; Mesnick, 950 F.2d at 823.

In some situations, however, a plaintiff may be entitled to use an approach that relieves her of this unremitting burden of persuasion. The key that unlocks this door is the existence of direct evidence that a proscribed factor (such as age, gender, race, or national origin) played a motivating part in the disputed employment decision. See Price Waterhouse, 490 U.S. at 276-77 (O'Connor, J., concurring); Fernandes, 199 F.3d at 580. Such evidence, if accepted by the factfinder, shifts the burden of persuasion to the employer, who then must establish that he would have reached the same decision regarding the plaintiff even if he had not taken the proscribed factor into account. See Price Waterhouse, 490 U.S. at 242; Fernandes, 199 F.3d at 580. Although the plaintiff's initial burden under this "mixed-motive" approach is heavier than the de minimis showing required to establish a prima facie case under the pretext approach, see Raskin v. Wyatt Co., 125 F.3d 55, 60 (2d Cir. 1997), most plaintiffs perceive the Price Waterhouse framework and its concomitant burden-shifting as conferring a pronounced advantage. In the average case, the employee thirsts for access to it, while the employer regards it as anathema. See Thomas v. Denny's, Inc., 111 F.3d 1506, 1512 (10th Cir. 1997).

**III. ANALYSIS**

We now return to the case at hand, focusing on the appellants' principal assignment of error.[2]  We split our analysis into two segments.  First, we evaluate the appellants' claim — strenuously challenged by CCC — that they introduced direct evidence sufficient to warrant a mixed-motive jury instruction.  Because we resolve that question favorably to the appellants, we then consider the appellants' follow-on claim that the judge failed to give a suitable mixed-motive instruction.

### A.   The Character of the Evidence Presented.

The appellants assert that the Becker testimony qualifies as direct evidence, and that the lower court therefore was obliged to give a mixed-motive jury instruction.  CCC disputes this assertion.  The question of whether particular evidence warrants a mixed-motive instruction is a question of law, subject to de novo review.  See Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 552 (10th Cir.), cert. denied, 120 S. Ct. 48 (1999); see also United States v. Flores, 968 F.2d 1366, 1367-68 (1st Cir. 1992).

---

[2]To the extent that the appellants advance other arguments, those arguments are insubstantial and we reject them out of hand.

As we recently had occasion to observe, the courts of appeals are in some disarray as to what constitutes direct evidence sufficient to provoke a mixed-motive instruction. See Fernandes, 199 F.3d at 582 (collecting cases). We need not draw overly fine distinctions today. For present purposes, it suffices to say that evidence is "direct" (and thus justifies a mixed-motive jury instruction) when it consists of statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision.[3] See, e.g., Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) (en banc), cert. denied, 120 S. Ct. 1243 (2000); Lambert v. Ackerly, 180 F.3d 997, 1008-09 (9th Cir.) (en banc), cert. denied, 120 S. Ct. 936 (1999); Thomas v. NFL Players Ass'n, 131 F.3d 198, 204 (D.C. Cir. 1997). Domenech's admission — that age was one of three criteria used, at least in some cases, to determine which employees would be retained and which would not — is of this genre. It therefore constitutes direct evidence warranting a mixed-motive instruction.

---

[3]We think it prudent to add a caveat. The phrase "direct evidence," by any definition, refers to evidence which, if believed by the factfinder, would warrant a burden shift. In a case tried to a jury, the phrase does not require that the plaintiff produce evidence that the court finds persuasive. In other words, credibility determinations in respect to direct evidence are for a properly instructed jury, not for the judge. See Thomas, 111 F.3d at 1512; Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 184 (2d Cir. 1992).

Although CCC rails against this conclusion, its attacks lack force. Domenech's statement was made by a decisionmaker, pertained to the decisional process, bore squarely on the employment decisions at issue (or, at least, on some of them), and straightforwardly conveyed age animus. Given these attributes, the statement cannot be dismissed as mere background noise or as a stray remark. See Fernandes, 199 F.3d at 583.

In a burst of optimistic surmise, CCC denies that Domenech's invocation of age as a criterion directly reflects age animus. In its view, he may have been referring, say, to a plan to give older employees special (favorable) treatment. We reject such speculation. Comments which, fairly read, demonstrate that a decisionmaker made, or intended to make, employment decisions based on forbidden criteria constitute direct evidence of discrimination. See Sheehan v. Donlen Corp., 173 F.3d 1039, 1044 (7th Cir. 1999) (observing that the term "direct evidence" covers more than virtual admissions of illegality). The mere fact that a fertile mind can conjure up some innocent explanation for such a comment does not undermine its standing as direct evidence. See id. To hold otherwise would be to narrow the definition of direct evidence so drastically as to render the Price Waterhouse framework inaccessible to all but the bluntest of admissions. We prefer

a more measured approach.  Cf. Fernandes, 199 F.3d at 583 (holding "that a statement that plausibly can be interpreted two different ways — one discriminatory and the other benign — does not directly reflect illegal animus and, thus, does not constitute direct evidence") (emphasis supplied).

Gauged against this benchmark, CCC's challenge falls short.  In context, there is nothing inscrutable about the statement attributed to Domenech.[4]  Its meaning is plain.  Thus, we give no credence to CCC's strained attempt to create ambiguity where none exists.

Taking a somewhat different tack, CCC asseverates that the evidence does not bear squarely on the contested employment decisions because Domenech's remark, as reported, merely posited that age was used as a criterion "in some cases" without specifically mentioning the appellants.  This argument assumes that a statement cannot bear squarely on an employment decision unless it specifically refers to that decision.  Both case law, see, e.g., Thomas, 131 F.3d at 204 (stating that "evidence may 'bear directly' on a decision without referring to it specifically"), and common sense refute that assumption.

---

[4]Becker, when queried about his response to Domenech's articulation of age as an employment criterion, testified that he "defended the older people" and pointed out to Domenech that "us older guys sometimes work better than the younger people."

-10-

Indeed, a contrary rule would mean that the greater never could be construed to include the lesser.

This case illustrates the wisdom of not requiring a specific reference. Becker testified that he asked Domenech about the criteria that were to be used to determine who would be transferred to Vega Baja and who would be cut loose. Domenech listed "age" among the pertinent criteria, signifying that this protected characteristic would be used as a criterion in some of those transfer decisions. The appellants were within the relatively small pool of employees who were being considered for transfer and were older than several of those who retained their positions. Under the circumstances, it would blink reality to pretend that this evidence did not bear squarely on the appellants' situations.

CCC's remaining assaults on the status of this evidence all relate, in one way or another, to Becker's credibility (or lack thereof).[5] These animadversions confuse the predicate for obtaining a mixed-motive jury instruction — the existence of direct evidence — with the predicate for shifting the burden of

---

[5]For example, CCC notes that Domenech denied making the "age" remark and suggests that his testimony was more credible than Becker's (especially since Becker never mentioned the matter until after he himself had been fired). CCC also notes that Becker was hardly a neutral party; at the time of trial, he was suing Caribe for wrongful discharge and age discrimination.

-11-

persuasion under a mixed-motive analysis — proof establishing that age played a motivating part in the challenged employment decision. See Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 162 (2d Cir. 1997); Thomas, 111 F.3d at 1512; Ostrowski, 968 F.2d at 182, 184. Whether or not Becker's testimony was credible — a matter on which we take no view — his recounting of Domenech's admission nonetheless constituted direct evidence.

## B. **The Jury Instructions.**

Because the appellants introduced direct evidence of age discrimination, the district court was obliged, upon the appellants' seasonable request, to give the jury a Price Waterhouse instruction. The lingering question, then, is whether the court satisfied that obligation. The appellants contend that the court gave them short shrift. We think not.

We briefly rehearse the controlling legal principles. A party has a right to an instruction on her theory of the case, provided that her theory is both valid in law and supported by evidence in the record. See United States v. DeStefano, 59 F.3d 1, 2 (1st Cir. 1995); Rogers v. ACF Indus., Inc., 774 F.2d 814, 818 (7th Cir. 1985). But that right does not imply a corollary right to insist that the trial judge use particular verbiage. See United States v. McGill, 953 F.2d 10, 12 (1st Cir. 1992). "Jury instructions are intended to furnish a set of directions

composing, in the aggregate, the proper legal standards to be applied by lay jurors in determining the issues that they must resolve in a particular case.    Provided that the charge satisfies this need, the court's choice of language is largely a matter of discretion."   DeStefano, 59 F.3d at 2 (citation omitted).

In this instance, the lower court deemed Becker's testimony to be direct evidence and attempted to instruct the jurors as to the effect of such evidence.[6]   The appellants

---

[6]The court stated in material part:

In order for the plaintiffs to prove discrimination . . . through direct evidence, each plaintiff must prove by a preponderance of the evidence . . . the following three elements:  One, that he or she was 40 years or older; and [two], he or she was qualified but was not transferred to or offered a position at the Vega Baja plant; and three, his or her age was a determinative factor in defendant's decision not to offer the plaintiffs a position in Vega Baja.

. . . .

If you find by a preponderance of the evidence that the plaintiffs have established [these three elements], then the plaintiffs are entitled to recover . . . .

If, however, the plaintiffs fail to prove any of these elements by a preponderance of the evidence, you must decide that the plaintiffs have not proven age discrimination.

Also, if you decide that the plaintiffs have failed to prove that age was a determinative factor in the defendant's decision, and would have suffered the

criticize the adequacy of this instruction.  We agree that it was not a textbook model and do not recommend its emulation in other cases.  Yet the appellants, in their contemporaneous objection, identified no specific flaw in the district court's language.  We quote the colloquy that ensued, out of the jury's earshot, when counsel interposed his objection to the mixed-motive instruction:

Appellants'
Counsel:        The plaintiffs specifically request from the Court to give a charge to the jury under <u>Price Waterhouse</u>.

Court:          But what is the specific charge that you want to give the jury?

Appellants'
Counsel:        [T]he specific charge that we are requesting is the following:  "If you find that the plaintiffs have presented sufficient direct evidence to establish that age was a motivating factor in the decision to deny to them the opportunity to transfer to work at the Vega Baja plant, then the burden of persuasion shifts to the employer, who must prove that it

_____

same consequences regardless of their ages, then you must find that the plaintiffs have not proven age discrimination.

        . . . .

        In other words, if plaintiffs have offered evidence from which you conclude that defendant discriminated against them because of their ages, plaintiffs are entitled to recover, unless the defendant proves that it would have taken the same action regardless of plaintiff's ages. . . .

-14-

would have made the same decision even if age had not been taken into account."

. . . .

Court: Let me rule on that first. The objection is denied. I charged the jury as follows: "In other words, if plaintiffs have offered evidence from which you can conclude that defendant discriminated against them because of their ages, plaintiffs are entitled to recover, unless the defendant proves that it would have taken the same action regardless of plaintiffs' ages." That's covered in my instruction. That's denied. Next one.

Appellants'
Counsel: To that we want to add that the case law is specific that there is a shifting in the burden of proof —

Court: Okay, you made your objection. You save it. You save it for appeal.

Appellants'
Counsel: Yes, your Honor, but in order for the record to be clear, that we are requesting that the jury be charged that the burden of proof has shifted once the plaintiff has presented direct evidence of discrimination, and very respectfully submit that the testimony in this case is sufficient to qualify it as direct evidence.

Court: Very well. I charged the jury that it is direct evidence. I said so.

These comments voiced displeasure, but they did not delineate particular language in the charge that the appellants deemed confusing, internally inconsistent, or otherwise inconcinnous. Under the circumstances, the appellants cannot now be heard to

-15-

complain about an overall lack of clarity or the potential for confusion. See Faigin v. Kelly, 184 F.3d 67, 87 (1st Cir. 1999); United States v. Lara, 181 F.3d 183, 196 (1st Cir. 1999); see also Fed. R. Civ. P. 51 (requiring parties objecting to instructions to "stat[e] distinctly the matter objected to and the grounds of that objection").

This is not the end of the matter, for the appellants have a more promising argument. They did, in the course of their objection, request a further instruction. They arguably were entitled to that instruction as long as it constituted a correct statement of the law, integral to an important issue in the case, that had not been substantially covered in the charge as rendered. See Faigin, 184 F.3d at 87; McGill, 953 F.2d at 13.

We conclude, however, that in this instance the district court's failure to accommodate the appellants' request for a supplementary instruction did not constitute reversible error. It is hornbook law that a trial court does not commit error when it instructs generally about a legal principle and then declines a party's request for a further instruction that is misleading, legally incorrect, or incomplete. See Lara, 181 F.3d at 196; DeStefano, 59 F.3d at 4; United States v. David,

-16-

940 F.2d 722, 738 (1st Cir. 1991).[7]  This is such a case.  The court had attempted to give a <u>Price Waterhouse</u> instruction.  <u>See</u> <u>supra</u> note 6.  In objecting to it, the appellants had asserted that more was needed.  To fill this perceived void, they urged the court to instruct that the burden of persuasion shifted as long as the appellants presented "sufficient direct evidence to establish that age was a motivating factor."  This was wrong as a matter of law.[8]  In a mixed-motive case, the burden of persuasion does not shift merely because the plaintiff

_____

    [7]<u>Wilson</u> v. <u>Maritime Overseas Corp.</u>, 150 F.3d 1 (1st Cir. 1998), is not to the contrary.  There, we stated that if the request for a particular instruction "directs the court's attention to a point upon which an instruction to the jury would be helpful, the court's error in failing to charge may not be excused by technical defects in the request." <u>Id.</u> at 10.  But that rule does not apply to substantial defects and, in all events, we made the statement in a situation where the district court had completely failed to instruct the jury on an area of law central to the case. <u>See</u> <u>id.</u> at 8.  In the matter at hand, the instructions given did address the mixed-motive approach, and thus were subject to no such deficiency.

    [8]To be sure, the phrase "sufficient direct evidence to establish" may be susceptible to the interpretation that the burden would shift if the appellants presented direct evidence that established <u>to the jury's satisfaction</u> that age actually was a motivating factor in the challenged employment decisions.  That would have been a correct statement of the law.  But the phrase's more natural reading, especially in light of the colloquy that followed, is a legally erroneous one, to the effect that the burden would shift if the appellants adduced direct evidence sufficient to permit a finding that age was a motivating factor.  In all events, a jury instruction's proponent has a duty to clarify ambiguities, <u>see</u>, <u>e.g.</u>, <u>David</u>, 940 F.2d at 738, and the appellants did not do so here.

introduces sufficient direct evidence to permit a finding that a discriminatory motive was at work; the burden shifts only if the direct evidence in fact persuades the jury that a discriminatory motive was at work. Put another way, the burden of persuasion does not shift unless and until the jury accepts the "direct evidence" adduced by the plaintiff and draws the inference that the employer used an impermissible criterion in reaching the disputed employment decision. See Kirsch, 148 F.3d at 162; Ostrowski, 968 F.2d at 184. The appellants' proposed instruction blurred this distinction.

The colloquy that followed the objection shows convincingly that the appellants were conflating the standard governing the giving of a mixed-motive instruction with the standard governing the ensuing burden shift. For example, their counsel stated: "We are requesting that the jury be charged that the burden of proof has shifted once the plaintiff has presented direct evidence of discrimination." He then opined that "the defendant has to carry a burden once there is a presentation of sufficient direct evidence to sustain a Price Waterhouse charge." Since the appellants garbled the two propositions, they cannot fault the district court either for failing to separate wheat from chaff or for refusing to give the requested instruction. See David, 940 F.2d at 738.

-18-

## IV.  CONCLUSION

We need go no further.[9]  The short of it is that the district court correctly apprehended the character of the evidence presented and charged the jury accordingly.  The court's mixed-motive instruction was not letter perfect, but it sufficed to place the issue before the jury.  In the absence of either a particularized objection to the instruction actually given or an appropriate request for a more enlightening instruction, the jury verdict must stand.

**Affirmed.**

---

[9]The court below did not require the appellants to make an election before submitting the case to the jury, and instead appears to have instructed on both the pretext approach and the mixed-motive approach.  The appellants do not assign error to the submission of these alternate theories to the jury, and we express no opinion on the practice.