Freddy RAMIREZ–AGUIRRE, Plaintiff

v.

RANGER AMERICAN ARMORED SERVICES, INC., Defendant.

Civil No. 02–2639 (JAG).

United States District Court, D. Puerto Rico.

Aug. 11, 2004.

Federico Lora–Lopez, Federico Lora Lopez Law Office, Manuel E. Moraza–Ortiz, San Juan, PR, for Plaintiffs.

Angel X. Viera–Vargas, Heber E. Lugo–Rigau, Goldman Antonetti & Cordova, San Juan, PR, for Defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On February 20, 2004, defendant, Ranger American Armored Services, Inc. ("Ranger"), moved pursuant to Fed. R.Civ.P. 56(b) for dismissal of plaintiff's claims of nationality and disability-based discrimination (Docket No. 34). On March 16, 2004, plaintiff, Freddy Ramírez–Aguirre ("Ramírez"), opposed (Docket No. 43). For the reasons discussed below, the Court **GRANTS** Ranger's motion for summary judgment.

## FACTUAL BACKGROUND[1]

Plaintiff Ramírez was born in Lima, Perú. While in Perú he studied auto mechanics at a technical school. Approximately twenty-three years ago, Ramírez entered United States territory with a tourist visa, which eventually expired. Ramírez arrived in Puerto Rico twelve years ago. Seven years ago, he legalized his status.

As a result of an ostensible car-jacking that occurred January 1, 1999, Ramírez suffers from a right-hand nerve injury that limits its use. His left-hand is the dominant one, however, and Ramírez demonstrates ambidextrous skills. On or about April 1999, Ramírez requested the services of the Vocational Rehabilitation Administration ("Administration"). At the Administration his case was processed by a licensed rehabilitation counselor, and he was eventually referred to undergo evaluations by a physiatrist, a physical therapist, and an occupational therapist.

Defendant Ranger is dedicated to the transportation and safeguarding of currency and other valuables, and as such owns and operates a fleet of armored trucks. On July 27, 1999, Ranger hired Ramírez as an electro-mechanic, without the intervention of the Administration. At the time of hiring, Ramírez's nationality and arm impairment were evident yet overlooked. At Ranger, Ramírez's duties included the repair of electronic and mechanical deficiencies in the armored trucks.

On May 29, 2001, Administration personnel visited Ramírez at Ranger. While there, it was observed that Ramírez was able to perform his duties and use all types of tools without difficulty, had no palpable need for special medical assistive equipment (although it was noted that plaintiff lacked basic tools such as pliers and "cable-cutters"), and that the attitude of Ramírez's co-workers during the evaluation was friendly and cooperative.

On December 7, 2001, Ramírez was discharged. Consequently, Ramírez filed the present claim. Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e–2(a)(1) ("Title VII"), and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12112(b)(5)(A) ("ADA"), plaintiff alleged that he was discharged from employment because of his national origin, his alleged disability, and as retaliation for engaging in statutorily protected activities. Additionally, Ramírez invoked supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, as to Ranger's supposed violation of Puerto Rico's Act No. 100 of June 30, 1959, 29 L.P.R.A. § 146, Act No. 80 of May 30, 1976, 29 L.P.R.A. § 185(a), Act No. 44 of July 2, 1985, 1 L.P.R.A. § 501, and Act 115 of December 20, 1991, 29 L.P.R.A. § 194.

---

1. The facts set out in turn are those considered undisputed after reviewing Plaintiff's Statement of Uncontested Facts (Docket No. 43) and Defendant's Statement of Uncontested Facts (Docket No. 34).

## DISCUSSION

A. *Standard for Reviewing a Motion for Summary Judgment*

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52. (1st Cir.2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See* Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment." *Id.* at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

B. *Defendant's Motion for Summary Judgment*

Ranger moves for summary judgment on four predominant grounds: (1) that Ramírez failed to provide sufficient proof that would feasibly support the claim that he was the subject of discrimination based on national origin as a matter of law, (2) that Ramírez is not a qualified individual with a disability under the ADA, (3) that plaintiff's claim of retaliation is without merit, and (4) that plaintiff's claims under Puerto Rico's laws are equally baseless.

Plaintiff opposed summary judgment, arguing that he presented enough evidence for a reasonable jury to find that lawless discrimination based on national origin did occur. Furthermore, Ramírez alleged that he is a disabled individual under the ADA,

and that he is entitled to a jury trial on his claims of discrimination based on his disability and retaliation claims.

### 1. *Title VII Claim*

Plaintiff first alleges that the rationale motivating his dismissal from Ranger was a discriminatory animus based on his national origin.

Title VII renders it unlawful "for an employer to discharge any individual ... because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C.A. § 2000e–2(a)(1). As such, the factual inquiry in a Title VII case is whether a defendant intentionally discriminated against the plaintiff. *United States Postal Serv. Bd. of Govs. v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). In other words, "is the employer ... treating some people less favorably than others because of their race, color, religion, sex, or national origin." *Id.*

The complainant in a Title VII trial must carry the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In like manner, the Supreme Court has often recapitulated how the proper allocation of burdens and proof in a Title VII case should develop.

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This juxtaposing of burdens notwithstanding, the specific burden of articulating a licit, non-discriminatory reason for the adverse employment decision belongs to the defendant. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 823 (1st Cir.1991). Yet be that as it may, defendant's burden is one of production, hence, "the task of proving discrimination remains the claimant's at all times." *Id.*

The First Circuit has expressly adopted this burden-shifting framework in cases where direct evidence of discrimination is absent. *Mulero–Rodríguez v. Ponte, Inc.*, 98 F.3d 670, 673 (1st Cir.1996). Direct evidence is that which consists of statements by a decision-maker that "directly reflect the alleged animus and bear squarely on the contested employment decision." *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60 (1st Cir.2000). Thus, for a Title VII plaintiff to otherwise succeed, he must establish a *prima facie* case that he (a) is a member of a protected class, (b) met the employer's legitimate performance expectations, (c) was severely affected, and (d) was replaced by another with similar skills and qualifications. *Id.* The burden then shifts to the employer to produce a valid and nondiscriminatory reason for the dismissal. *Id.* In the final stage, the burden shifts back to the plaintiff to show that defendant's stated reason for the dismissal is false and but a pretext for discrimination. *Id.* Decidedly, a plaintiff is not required to present "smoking-gun evidence" before prevailing in a discrimination suit. *Mesnick*, 950 F.2d at 824. Nevertheless, it is not sufficient for a plaintiff merely to impugn the veracity of the employer's account. *Id.* To the contrary, "he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: discrimination." *Id.*

■ This Court finds that plaintiff established three of the four elements required by First Circuit precedent for purposes of a Title VII claim. Ramírez is a member of a protected class defined by his national origin. It is undisputed that Ramírez is of Peruvian descent and thus nationality. Additionally, this Court finds that plaintiff was severely affected by defendant's employment action, namely, by his dismissal from Ranger. The Court also accepts, *arguendo,* that the person who replaced Ramírez was of similar skills and qualifications.

This Court finds, however, that Ramírez failed to establish by a preponderance of the evidence that he met Ranger's legitimate performance expectations. Before the Court is the deposition of Luis A. Rivera–Acevedo ("Acevedo"), one of Ramírez's co-workers. In it, Acevedo contends that he was often bound by Ramírez's inefficiency in the workplace, further stating "I had to fix almost the majority of the jobs that [Ramírez] did," and that "there were times when I arrived there and there were jobs that he either didn't finish or when [Ramírez] finished a truck the next day I had to go solve the electrical problem." (Acevedo Dep. at 24). Ranger supports these sworn statements with three memoranda sent to Ramírez between April 12, 2000 and August 9, 2000, that chasten plaintiff for leaving official equipment out of place, for failing to follow through with a requested replacement of unit parts, and for continuing to maintain assigned units in disrepair. For some mystifying reason, Ramírez chooses to merely allege that Acevedo is mistaken, that he was not Ramírez's supervisor, and that Ramírez's immediate supervisor had no complaints regarding the former's performance. These responses are insufficient.

"Even though all doubts must be resolved in the nonmovant's favor, allegations alone will not defeat summary judgment." *Cone v. Longmont United Hosp. Ass'n.,* 14 F.3d 526, 530 (10th Cir.1994); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The only allegation Ramírez makes that is somewhat supported by a sworn statement is that which claims that his supervisor, José A. Maldonado ("Maldonado"), had no complaints as to Ramírez's execution. Nevertheless, Maldonado's sworn statement does not dispute Ranger's purported facts. Ramírez's own Statement of Material Facts quotes Maldonado asserting only that "during the lapse of time he worked under my supervision, I have no complaints, I ignore the knowledge of the work he realized, I cannot do anything contrary to that." (Docket No. 43 at 5). Ridden with qualifiers, Maldonado's remarks do not contradict three written memoranda nor another individual's sworn assessment of Ramírez's job performance.

In light of the above, this Court also finds that Ranger has produced a valid and non-discriminatory reason for Ramírez's dismissal, specifically, that the latter's work was subpar and that the company was in the process of restructuring its operations. The burden now shifts back to Ramírez to show that there is enough evidence for a jury to find that defendant's given reasons for dismissing plaintiff are a mere pretext to mask a discriminatory animus.

Plaintiff has failed to pose satisfactory evidence that could lead a reasonable jury to find that the adverse employment action he suffered resulted from defendant's nationality-based discriminatory intent instead of the valid reason defendant proffers.[2] Unquestionably, state of mind is

2. Ramírez insists on arguing that he suffered one form or another of nationality-based dis-

onerous to prove and prodigious circumspection is required where summary judgment is sought on an issue involving state of mind. *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975). Still, "there must be some indication that the party opposing summary judgment can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Id.*

■ Ramírez disputes Ranger's proffered rationale for the dismissal by claiming that discrimination on the basis of national origin was established by the insulting comments made by his co-workers, which in turn led to a hostile work environment and illicit harassment. "Comments which, fairly read, demonstrate that a decisionmaker made, or intended to make, employment decisions based on forbidden criteria constitute direct evidence discrimination." *Challenger Caribbean Corp.*, 214 F.3d at 61. However, "remarks at work that are based on stereotypes of an individual's national origin do not invariably prove that national origin played a part in an employment decision." *Hong v. Children's Memorial Hosp.*, 993 F.2d 1257, 1265 (7th Cir.1993). Rather, Ramírez must go further and show that Ranger relied on this impermissible criterion in making its decision. *Id.*

■ Plaintiff does not point to any evidence that establishes a reasonable inference that Ranger's proffered explanation is unworthy of credence. *Cone*, 14 F.3d at 530. Ramírez relies on affidavits and depositions which, indisputably, do create a debate as to whether Ramírez was called "expatriate" and "Peruvian expatriate" while at the workplace. What is also indisputable is that this reliance is misplaced when the dispositive issue is the motivating factor supporting the decisions of individuals in a position to detrimentally affect Ramírez's employment status.

Bias and a perceived environment of disdain in the workplace are unfortunate and questionable, and, as Ramírez denounces, Ranger's attempts at downplaying the potential seriousness of many individuals ridiculing one are censurable. The term "expatriate" is more debasing than typical, and this Court will not be duped by Ranger's squabbling to the contrary. In spite of this, attributed remarks may be concededly coarse yet legally unconvincing if "there is nothing about them which suggests to an objectively reasonable observer that they constituted expressions of discrimination based on national origin." *Pagano v. Frank*, 983 F.2d 343, 349 (1st Cir.1993). Furthermore, as the Supreme Court noted,

> Whether an environment is hostile or abusive can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a merely offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). For what it is worth, all that Ramírez has demonstrated is that fellow workers occasionally insulted him and one future supervisor turned a blind eye. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.* Moreover, as the First Circuit has enunciated, "the biases of one who neither makes nor influences the chal-

---

crimination. Thus, the Court will address all outstanding claims, in spite of finding that, in light of admissible evidence, the initial burden of showing that Ramírez met Ranger's legitimate performance expectations was not met.

lenged personnel decision are not probative in an employment discrimination case." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 10 (1st Cir.1990). Case in point is the affidavit of Raymond Delgado Torres ("Delgado"), Ranger's Director of Operations, and notably, the person who dismissed Ramírez. Ramírez does not contest Delgado's sworn statement that the latter *was not aware of plaintiff's nationality* until the filing of this complaint. Likewise, Ramírez does not furnish any relevant materials to challenge the dismissal letter that set forth that Ranger was in the process of restructuring their Mechanics Department, which led to Ramírez's position being eliminated. Consequently, there is scarce, if any, support for the assertions of a hostile work environment or of resulting discrimination, and as such, Ramírez has failed to muster enough evidence to call into question defendant's nondiscriminatory explanations.

All that Ramírez adduces to is wanting for purposes of evidencing unresolved genuine disputes. This Court's decision remains true to the rule that a plaintiff who may only reasonably succeed in proving hurtful utterances, and nothing more, is not a prosperous Title VII litigant. *Harris*, 510 U.S. at 21, 114 S.Ct. 367. Ramírez was not guaranteed a working environment free from stress. *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir.1986). The epithets that were allegedly uttered did not affect the conditions of his employment to implicate Title VII. *Harris*, 510 U.S. at 21, 114 S.Ct. 367. Additionally, even believing Ramírez's version of events, and disbelieving Ranger's, nothing would add up to nationality-based discrimination as a matter of law. This Court has sought and sifted for evidence in the record of a link between the alleged insults, the alleged hostile work environment, and the rationale of the relevant decisionmaker who discharged Ramírez. The record evinces none. Absent authoritative weight, Ramírez's allegations of nationality-based discrimination are bereft of Title VII meaning, and his claim must be dismissed.

### 2. *Plaintiff's ADA Claim*

The ADA is a civil rights statute, enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). In the employment context, the ADA prohibits a "covered entity" (defined as "a person engaged in an industry affecting commerce who has fifteen or more employees") from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *Katz v. City Metal Co., Inc.*, 87 F.3d 26, 30 (1st Cir.1996).

 To establish a claim of disability discrimination under the ADA, a plaintiff must prove, by a preponderance of the evidence, that he (or she) (1) was disabled within the meaning of the ADA, (2) was able to perform the essential functions of the job with or without reasonable accommodation, and (3) was discharged by the employer in whole or in part because of his (or her) disability. *Jacques v. Clean–Up Group*, 96 F.3d 506, 511 (1st Cir.1996). Alternatively, a plaintiff may also "indirectly" prove his or her case by demonstrating by a preponderance of the evidence that he or she (a) has a disability within the meaning of the ADA, (b) is qualified to perform the essential functions of the job, with or without reasonable accommodations, (c) was subject to an adverse employment action by a company subject to the ADA, (d) was replaced by a

non-disabled person or treated less favorably than non-disabled employees, and (e) suffered damages as a result. *Id.*

■■■ The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desired." 42 U.S.C. § 12111(8). A "disability" is (i) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (ii) a record of such an impairment; or (iii) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Merely having a physical impairment does not make an individual disabled for purposes of the ADA. *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). A claimant also needs to prove that the impairment limits a major life activity. *Id.* A relevant illustration of a "major life activity" is "performing manual tasks." *Id.* To be substantially limited in performing manual tasks, an individual "must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 198, 122 S.Ct. 681. Manual tasks that are unique to any particular job are not of necessity important parts of most people's lives. *Id.* at 201, 122 S.Ct. 681. In the end, plainly, yet qualifiedly, "whether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines*, 527 U.S. 471, 483, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).

■■■ The Court finds that Ramírez is not a disabled individual for purposes of the ADA. Doubtlessly, it is uncontested that plaintiff suffers from muscle atrophy in his right forearm and right-hand muscle. Additionally, Ramírez is unable to make a complete fist with his right hand. Thus, the use of his right hand is truly

limited, and Ramírez is physically impaired. "A physiological disorder or condition affecting the musculoskeletal system is a physical impairment." *Lebrón–Torres v. Whitehall Laboratories*, 251 F.3d 236, 240 (1st Cir.2001). Unfortunately for Ramírez, "experiencing some discomfort or difficulty as a consequence of an impairment is not enough to qualify under the ADA." *Lamboy–La Salle v. Puerto Rico Tel. Co.*, 8 F.Supp.2d 122, 124 (D.P.R. 1998). One who seeks to assert ADA protection must show that the physical impairment limits a major life activity in a substantial way. *Toyota Motor*, 534 U.S. at 195, 122 S.Ct. 681. Ramírez, presumably, contends that his major life activities are reaching, lifting, performing manual tasks, and working. Courts have noted that when the major life activity of working is at issue, a plaintiff assumes a more fact-specific burden of proof. *See, e.g., Alamo Rodríguez v. Pfizer Pharmaceuticals, Inc.*, 286 F.Supp.2d 144, 156 (D.P.R.2003), *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 11 (1st Cir.1999).

In the case at hand, lack of evidence, not specificity, distinguishes Ramírez's contentions. When addressing the major life activity of performing manual tasks, "the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with [his] specific job." *Toyota Motor*, 534 U.S. at 200–01, 122 S.Ct. 681. Plaintiff has provided little less than a scintilla of evidence to support the notion that he is unable to perform tasks central to most people's daily lives. In the context of his place of work, for example, Ramírez adjusted splendidly. The deposition of Marideli Arrieta Cedó ("Arrieta"), one of the Administration officials who visited Ramírez at Ranger, implies so. According to Arrieta's observations, Ramírez was able to perform his tasks, and his supervisor verbally corrobo-

rated it. (Docket No. 34, Exhibit 11 at 19–20). Ramírez himself stated under oath that he was not disabled to work, nor was his physical condition an impediment to his working. (*Id.*, Exhibit 1 at 58). Delgado, the man who fired Ramírez, also expressed that he understood that plaintiff had no physical limitation. (*Id.*, Exhibit 3 at 11). To be fair, the record reflects that, on occasion, Ramírez requested assistance when dealing with singular tasks. These rare examples do not furnish evidence that would lead to a finding that major life activities were substantially limited as a matter of law. *Murphy v. UPS*, 527 U.S. 516, 525, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). In conclusion, Ramírez is not disabled within the meaning relevant to an ADA claim because he has no proof of a physical impairment that severely or substantially restricts him from doing activities that are of central importance to most people's daily lives [3].

Plaintiff's final salvo is his retaliation claim. Ramírez submits that Ranger discharged him as a result of the former requesting assistance and intervention from the Administration. The ADA retaliation provision states that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). For Ramírez to establish a *prima facie* claim of retaliation, he "must show that he was engaged in protected conduct, that he was discharged, and that there was a causal connection between the discharge and the conduct." *Wright v. CompUSA*, 352 F.3d 472, 478 (1st Cir. 2003). An ADA plaintiff need not prevail on a disability claim to assert a claim for retaliation. *Id.* at 477.

This Court finds, however, that plaintiff does not meet the required threshold for an ADA retaliation claim. Ramírez cannot point to any evidence in the record that would reasonably support his claim that he was engaged in protected conduct or that there was a causal connection between the discharge and any protected conduct. Requesting reasonable accommodations is a protected activity for the purposes of the ADA retaliation provision. *Id.* at 478. In the present case, however, Ramírez did not request reasonable accommodations.[4]

---

3. Ramírez correctly posits that being regarded as disabled would overcome the hurdle of actually proving a disability under the ADA. Regrettably, there is no evidence of such a fact in this case. At best, some Ranger employees admitted that Ramírez appeared to have a physical impairment and sporadic difficulty when confronting certain tasks. Yet "an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfying the singular demands of a particular job." *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir.1986). And nothing in the record legitimates the allegation made by Ramírez that Ranger assumed he was unfit for any job. It is not a reasonably objective conclusion to make to believe that any employer would tolerate an employee's utmost incapacity for months on end. Some relevant evidence was necessary, yet none was proffered.

4. A request for reasonable accommodations must explain how the accommodation requested is linked to some disability. *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir.2001). Ramírez required from Ranger a scanner, bench, ladder and special wrench. The parties do not dispute that it is common industry practice for every mechanic in a repair shop such as Ranger's to possess their own personal tools. As a matter of fact, Ramírez's own tools were stolen. Keila Figueroa, who works for the Administration, acknowledged under oath that the tools Ramírez requested from her agency were of the type that any mechanic, disabled or not, would need to be able to fulfill customary duties. Plaintiff himself admits that the tools he requested pertained to the area of

In addition, there is no document in the Administration's records that could be considered a complaint against Ranger. Assuming *arguendo*, however, that Ramírez did engage in protected conduct, still there is no genuine factual dispute supported by any germane occurrence that could connect Ranger's decision to discharge with the protected conduct. Allegations alone do not suffice at the summary judgment stage. Plaintiff may pontificate regarding what Ranger did or did not know, but "knowledge on an employer's part that an employee is pursuing a discrimination claim cannot itself be sufficient to take a retaliation case to the jury." *Mesnick*, 950 F.2d at 828.

Any optimistic reliance on the timing of the dismissal *vis a vis* the Administration's visit is equally futile. The Administration arrived at Ranger in May and plaintiff was discharged in December. Plaintiff's assertions are the product of a narrow view of events, and the larger picture undercuts any claim of causation. *Soileau v. Guilford of Maine*, 105 F.3d 12, 16 (1st Cir. 1997). In short, Ramírez's claim of retaliation lacks any support for he is unable to plausibly prove the essential element of causation, not to mention engagement in safeguarded behavior.

### 3. *Plaintiff's State Law Claims*

The Court, exercising its broad discretion in such matters, dismisses Ramírez's State law claims without prejudice pursuant to 28 U.S.C. 1367(c)(3). The case at hand is not one of diversity jurisdiction, and no substantial federal claim remains. "The power of a federal court to hear and to determine state-law claims in nondiversity cases depends upon the presence of at least one substantial federal claim in the

self-employment and are not special medical assistive tools for someone who is physically

lawsuit." *Newman v. Burgin*, 930 F.2d 955, 963 (1st Cir.1991).

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendant's motion for summary judgment (Docket No. 34). The federal claims are dismissed **with prejudice.** Supplemental state law claims are dismissed **without prejudice.** Judgment shall enter accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 11th day of August 2004.