[Cite as *Cittadini v. Southwest Gen. Health Sys.*, 2011-Ohio-6464.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96254**

## LYNDA CITTADINI

PLAINTIFF-APPELLANT

vs.

## SOUTHWEST GENERAL HEALTH SYSTEM, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-713748

**BEFORE:** Blackmon, P.J., Sweeney, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 15, 2011

**ATTORNEY FOR APPELLANT**

Denise J. Knecht
4415 Euclid Avenue
Suite 310
Cleveland, Ohio 44103

**ATTORNEYS FOR APPELLEES**

Susan C. Hastings
Izoduwa E. Ebose-Holt
Squire, Sanders & Dempsey, LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114

PATRICIA ANN BLACKMON, P.J.:

{¶ 1} Lynda Cittadini appeals the trial court's decision granting summary judgment in favor of Southwest General Health System ("Southwest General") and Sally Miller ("Miller"). Cittadini assigns the following errors for our review:

> **"I. The trial court erred in granting defendants' motion for summary judgment."**
>
> **"II. The trial court erred by excluding the opinion of an expert who: A) possessed knowledge and experience beyond that possessed by a lay person and who dispelled a misconception common among lay persons; B) was qualified by specialized knowledge, skill, experience, training and education; and C) whose opinion was based on reliable technical and other specialized information."**

{¶ 2} Having reviewed the record and pertinent law, we reverse in part and affirm in part the trial court's decision. Specifically, we sustain the first assigned error as it pertains to Cittadini's age discrimination claim; but overrule it on the remaining claims. Additionally, we sustain Cittadini's second assigned error and remand for a trial. The apposite facts follow.

{¶ 3} On February 23, 2003, Cittadini, then age 53, began working at Southwest General as a part-time communications operator on the second shift. In November 2005, Cittadini learned that Miller, her immediate supervisor, was experiencing financial difficulties and was in danger of losing her home. Cittadini offered to loan Miller money to make her house payment, Miller accepted, and on November 23, 2005, Cittadini gave Miller a check for $1,000.

{¶ 4} On June 29, 2006, Southwest General announced that a reduction in workforce had become necessary and that an outside consulting firm it had hired recommended layoffs in all departments. Prior to the implementation of the layoffs, performance data for the communications department was compiled detailing the volume of calls handled by each operator.

{¶ 5} According to the data from the study, Cittadini was one of four individuals, who handled the least amount of calls. As a result, Cittadini was selected to be laid off. Southwest General offered Cittadini a severance package, which she accepted, and left the company. In September 2006, Southwest General called Cittadini back to work. At the time she was recalled, Cittadini was 56 years old.

**{¶ 6}** On Friday June 26, 2009, while working the second shift, Cittadini took a knife out of her purse and showed it to three fellow operators. Cittadini opened and closed the knife and indicated that her husband had given it to her. Jean Newcombe and Heidi Boone, two of the coworkers that were present characterized the knife as a switchblade.

**{¶ 7}** The following day, Boone reported the incident to Southwest General's Protective Service Department and to Miller, their immediate supervisor. Miller, in turn, reported it to Glen Cowan and Judith Murphy of the human resources department. Cowan and Murphy met separately with Newcombe, Boone, and Cittadini to investigate the report. On June 30, 2009, Southwest General terminated Cittadini, then age 59, for violating Southwest General's weapons policy.

**{¶ 8}** On December 22, 2009, Cittadini filed a complaint against Southwest General and Miller alleging claims of age discrimination, malicious breach of contract against Miller for failing to repay the loan, and defamation. On October 12, 2010, after significant motion practice, Cittadini filed a motion for partial summary judgment seeking a decision that defendant's statements, if false, constituted defamation per se, that Miller owed interest on the past due loan, and whether the issue of punitive damages against Miller for malicious breach of contract should be presented to the jury.

**{¶ 9}** Also on October 10, 2010, Southwest General and Miller filed a motion for summary judgment seeking dismissal of all claims. On November 12, 2010, Cittadini filed her motion in opposition to Southwest General and Miller's motion for summary

judgment. On December 2, 2010, the trial court granted Southwest General and Miller's motion for summary judgment. Cittadini now appeals.

## Summary Judgment

{¶ 10} In the first assigned error, Cittadini argues the trial court erred in granting summary judgment in favor of Southwest General and Miller.

{¶ 11} We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays* (2000), 140 Ohio App.3d 1, 746 N.E.2d 618, citing *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 506 N.E.2d 212; *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.* (1997), 121 Ohio App.3d 188, 699 N.E.2d 534. Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party.

{¶ 12} The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264. If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. Id. at 293.

{¶ 13} R.C. 4112.02 provides, in relevant part:

**"It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment. \* \* \*"**

{¶ 14} Pursuant to *Mauzy v. Kelly Svcs., Inc.*, 75 Ohio St.3d 578, 582, 1996-Ohio-265, 664 N.E.2d 1272, Ohio courts may rely on federal anti-discrimination case law when interpreting and deciding claims brought under R.C. 4112.02 and R.C. 4112.14.

{¶ 15} Under both federal and Ohio standards, a plaintiff may establish a prima facie case of discrimination through either direct or indirect evidence. Absent direct evidence, indirect evidence may be used to raise an inference of direct and circumstantial discriminatory intent where Cittadini establishes that she: 1) was a member of a statutorily protected class; 2) was subject to adverse employment action; 3) was qualified for the position; and 4) that comparable, non-protected persons were treated more favorably than Cittadini. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668; *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439.

{¶ 16} In *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, the Supreme Court of Ohio modified the fourth prong of this test, by replacing it with "a requirement that the favored employee be substantially younger than the protected" individual. Id. at ¶19. The Supreme Court of Ohio declined to define

"substantially younger." Id. at ¶22. Instead, the court noted that "[t]he term 'substantially younger' as applied to age discrimination in employment cases defies an absolute definition and is best determined after considering the particular circumstances of each case." Id. at ¶23.

{¶ 17} Once a plaintiff succeeds in establishing a prima facie case of discrimination, the burden shifts to the employer to rebut the presumption of discrimination by articulating some legitimate, nondiscriminatory reason for its adverse action. Then, assuming the employer presents such reasons, the burden shifts back to the plaintiff to show that the purported reasons were a pretext for invidious discrimination.

{¶ 18} To succeed in sustaining the ultimate burden of proving intentional discrimination, a plaintiff may establish a pretext either directly, by showing that the employer was more likely motivated by a discriminatory reason, or indirectly, by showing that the employer's proffered reason is unworthy of credence. *Sarach-Kozlowska v. Univ. of Cincinnati College of Med.*, Ct. of Cl. Case No. 2001-07505, 2004-Ohio-1926, citing *Fragante v. City & Cty. of Honolulu* (C.A. 9, 1989), 888 F.2d 591, 595, citing *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207.

{¶ 19} Upon reviewing the evidence in a light most favorable to Cittadini and determining the applicable law to Cittadini's age discrimination claim, we conclude that Cittadini is entitled to have her case determined by a jury.

{¶ 20} In the instant case, Southwest General never alleged that Cittadini was not qualified as a telephone operator at the time that she was terminated at age 59. It is undisputed that Southwest General's proffered reason for terminating Cittadini was an alleged violation of their weapons policy. In her deposition, Cittadini testified that younger employees brought and used knives at work and were not terminated or disciplined.

{¶ 21} Cittadini has met the four prong test of *McDonell Douglass*. She has established that she is a member of a protected class; that she was terminated from her employment; that she was qualified for the position; and that younger employees were allowed to bring knives to the workplace and they were not terminated or disciplined under the safety policy.

{¶ 22} Under *Coryell v. Bank One*, the Ohio Supreme Court held that the fourth prong means that the favored employee be substantially younger. Substantially younger is best determined after considering the particular circumstance of each case. This case presents its peculiar set of facts.

{¶ 23} To succeed in sustaining the ultimate burden of proving intentional discrimination, Cittadini may establish a pretext indirectly by showing that the employer's stated reason for the termination is unworthy of credence. In her deposition, Cittadini named several younger employees who had knives, who used them as kitchen utensils, and who were not subject to discipline or termination under the deadly weapons policy. Cittadini testified that these younger employees used knives to chip ice and that she used

her knife in the same way. As such, Cittadini argues as a matter of law, Southwest General's reason is pretexual, and maintains she was fired because of her age.

{¶ 24} Cittadini also illuminates the uniqueness of this case by establishing that Southwest General's safety policy is an identical statement of the Ohio deadly weapons law. Cittadini argues that she should have been allowed to present evidence that the weapon was not deadly as defined within this frame work, and, as such, Southwest General's reason is pretextual. Because Cittadini's claim centers on treatment regarding a specific policy that could have been refuted by expert testimony, she should have been allowed to present her case to a jury.

{¶ 25} We conclude this is not a case involving "replacement discrimination by a younger employee," but a differential treatment case. Cittadini can establish pretext by showing that the employer was more likely motivated by a discriminatory reason rather than the employers proffered reason, and that the proffered reason is unworthy of credence. Here, Cittadini offered testimony directly attacking whether she had a deadly weapon; consequently, she is entitled to have this issue presented to a jury. Under the de novo standard, we sustain this part of the first assigned error and reverse for a trial.

## Defamation

{¶ 26} However, on her defamation claim, we disagree. Cittadini claims she was defamed when statements were made that she had a knife at her desk.

{¶ 27} To prevail on her defamation claim, Cittadini must show that (1) a false statement of fact was made, (2) the statement was defamatory, (3) the statement was

published, (4) Cittadini suffered injury as a proximate result of the publication, and (5) Southwest General acted with the required degree of fault in publishing the statement. *Byrne v. Univ. Hosps.*, Cuyahoga App. No. 95971, 2011-Ohio-4110, citing *Pollock v. Rashid* (1996), 117 Ohio App.3d 361, 368, 690 N.E.2d 903.

{¶ 28} The threshold determination of whether the allegedly defamatory statement is one of fact or opinion is a matter of law to be decided by the court. *Sikora v. Plain Dealer Publishing Co.,* Cuyahoga App. No. 81465, 2003-Ohio-3218, ¶16.

{¶ 29} In granting summary judgment in favor of Southwest General and Miller, on Cittadini's defamation claim, the trial court stated in pertinent part as follows:

> **"The Court agrees with the ruling in *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, that statements made between two employees of a company are protected by a qualified privilege and not actionable as defamation unless done with actual malice. Plaintiff has failed to show that defendant knew the statements were false or acted with reckless disregard as to whether the statements were false so as to constitute actual malice. Rather, the Court finds that the statements were solely used for internal purposes and were protected by a qualified privilege."**
> Journal Entry, Dec. 2, 2010.

{¶ 30} In the instant case, there is a qualified privilege defense to Cittadini's defamation claim.

> **"A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty of a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only."** *Garofolo v. Fairview Park*, Cuyahoga App. Nos. 92283 and 93021, 2009-Ohio-6456.

{¶ 31} A review of the record demonstrates that the statements that Cittadini had a switchblade knife at her workstation were communicated between Southwest General's employees in furtherance of an internal investigation. As such, the statements were privileged communications. See *Gintert v. WCI Steel*, *Inc.*, 11th Dist. No.2002-T-0124, 2007-Ohio-6737. In addition, statements are not actionable unless done with actual malice. As previously discussed, Cittadini does not dispute that she had a knife at her workstation, but only its characterization as a switchblade.

{¶ 32} We conclude the statements were subject to a qualified privilege to which Cittadini has not shown any evidence of malice. As such, Cittadini's defamation claim fails to survive summary judgment.

## Loan

{¶ 33} Within this assigned error, Cittadini argues that the trial court erred in granting summary judgment against her upon her claim for interest on the loan to Miller.

{¶ 34} In the instant case, it is undisputed that Cittadini loaned Miller $1,000. The record also indicates that during the pendency of the proceedings below, Miller repaid the loan. Nonetheless, Cittadini claims Miller owes interest on the loan. However, the evidence establishes that interest on the loan was never contemplated. The following exchange took place during Cittadini's deposition:

"Q. **There was no agreement on interest, was there?**

"A. **From me?**

"Q. **Correct.**

"**A.    No.**

"**Q.    Other than the check, the e-mails from you to Sally and the summary of the balance due, are there any other documents related to the loan that you made to Sally?**

"**A.    No.**" Cittadini Depo. 203.

{¶ 35} Here, the above excerpt establishes that payment of interest on the loan Cittadini made to Sally was not contemplated.   As such, her claim for interest on the loan fails.   Based on the aforementioned discussion, we conclude that there are no genuine issues of material fact regarding interest on the loan to Miller.   Accordingly, we sustain her assigned error as to the age discrimination claim, but overrule the first assigned error as to the remaining claims.

## Expert Witness

{¶ 36} In the second assigned error, Cittadini argues the trial court erred when   it denied her motion to conduct expert discovery regarding the knife and whether the investigation was properly handled.   We agree.

{¶ 37} The admission of expert testimony is within the trial court's discretion and will not be disturbed on appeal absent an abuse of discretion. *State v. Onunwor*, Cuyahoga App. No. 93937, 2010-Ohio-5587, citing *State v. Williams* (1996), 74 Ohio St.3d 569, 576, 660 N.E.2d 724.   An abuse of discretion requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.   *State v. Reiner* (2000), 89 Ohio St.3d 342, 356, 731 N.E.2d 662.

**{¶ 38}** Because Southwest General's weapons policy and the Ohio Revised Code's definition of a deadly weapon are similar, if not the same, expert testimony is necessary; consequently, Sergeant Michael Yurco's testimony should have been allowed.

**{¶ 39}** An "expert witness" may be qualified as an expert based on special knowledge, skill, experience, training, or education. Evid.R. 702. See *Abrams v. Siegel*, Cuyahoga App. Nos. 86386 and 86659, 2006-Ohio-1728, citing *McConnell v. Budget Inns of Am.* (1998), 129 Ohio App.3d 615, 625, 718 N.E.2d 948.

**{¶ 40}** We appreciate that matters of this nature rest within the trial court's discretion, however, in light of the nature of this case and Southwest General's stated reason, expert testimony is admissible. Accordingly, we sustain Cittadini's second assigned error.

**{¶ 41}** Judgment affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

JAMES J. SWEENEY, J., and
EILEEN A. GALLAGHER, J., CONCUR