[Cite as *Karsnak v. Chess Fin. Corp.*, 2012-Ohio-1359.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 97312

# GRACE KARSNAK

PLAINTIFF-APPELLANT

vs.

# CHESS FINANCIAL CORP., ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-725558

**BEFORE:** E. Gallagher, J., Boyle, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 29, 2012

**ATTORNEY FOR APPELLANT**

John R. Liber, II
Thrasher, Dinsmore & Dolan
1400 W. 6th Street
Suite 400
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEES**

Mark D. Katz
Adrienne L. Rapp
Ulmer & Berne L.L.P.
Skylight Office Tower
1660 West 2nd St., Suite 1100
Cleveland, Ohio    44113-1448

EILEEN A. GALLAGHER, J.:

**{¶1}** Plaintiff-appellant, Grace Karsnak, appeals the trial court's order granting summary judgment in favor of defendant-appellees, Chess Financial Corp. ("Chess"), F.Carl Walter, Bradley Turner and Angela Furmick. We affirm.

**{¶2}** Chess is an investment services and tax-planning business, employing approximately 25 individuals. Appellant began working at Chess in 1995 as a bookkeeper. Over the years, appellant assumed a number of duties pertaining to human resources and tax-related administrative work. During her last years at Chess her title was Human Resources-Tax Associate. Appellant worked part-time, three days a week. During the busy tax season, appellant would assist Chess with administrative tax-related tasks, organizing paperwork and inputting information into a computer program.

**{¶3}** In response to the poor economic climate, and due to a number of adverse circumstances, including loss of clients, a large client filing for bankruptcy, and the departure of one of Chess's shareholders, Chess began taking a number of cost-reducing measures to increase efficiency, including eliminating a tax director position, eliminating interest payments by reducing outstanding debt, freezing staff salaries, eliminating payments for shareholder life insurance premiums and ceasing reimbursements for client shipping costs. To further increase efficiency, Chess outsourced and automated portions of its administrative and tax duties that had been previously handled by appellant. From

2008 to 2010, Chess terminated two employees for performance related reason; Chess also chose not to replace at least two other employees, a tax director and senior planning associate, upon their termination, and simply combined their responsibilities with existing positions.

{¶4}  In 2009, appellant requested a reduction in her workload and Chess shifted some of appellant's human resources work, including the tracking of employee continuing education and PTOs, to Chess's office manager, Lisa Dearden.  Appellant agreed with this plan and maintained certain human resources responsibilities including payroll and benefits.  At the beginning of 2009, appellant asked Chess to reduce her workload because she believed it exceeded her capacity.  Chess consented, and immediately thereafter began delegating some of appellant's HR work to Lisa Dearden, Chess's Office Manager.

{¶5}  On November 4, 2009, Turner and Miller, two of Chess's directors, met with appellant to discuss her future with the company.  The directors presented appellant with a "Future Responsibilities - Discussion Draft" outlining the topics of conversation; it read:

> We have decided to complete the transition of your remaining Human Resource responsibilities by the end of this year.  As part of this transition, we would also like to propose the following responsibilities, work schedule and accommodations going forward
>
> · You will work with Lisa Dearden to transition your remaining HR responsibilities by year-end.

- You will continue with your tax responsibilities through April, 2010.
- Beginning January 4, 2010, you will work 5 days per week at your pro rata annual salary. You will also receive $300 per month for your benefit account.
- At the end of April, 2010, you will retire from Chess.
- In recognition of your contributions to Chess, the company will continue to pay 25% of your health insurance premiums or $1,200 annually, whichever is higher, until you reach age 65.
- If you are interested, and our workload is sufficient, we would like you to work as a contract employee in future tax seasons (January-April, 5 days per week) at an hourly rate to be determined. We would notify you of our needs by November 1st of each year.

{¶6} Appellant opposed Chess's proposal and defended the quality of her work. Appellant stated in an email to Chess that the November 4, 2009 memo had left her an "emotional wreck" and she began using personal time to "sort these things out" on Monday, November 9, 2009.

{¶7} On November 11, 2009, appellant sent Chess an email asking for: $5,000 for legal costs, fifteen months' severance pay ($40,000), 3% of 401(k) safe harbor payments for 15 months ($1,200), and six years' worth of health care premiums ($7,200). In exchange, appellant offered to resign and "not file a complaint or pursue charges with the Ohio Civil Rights Commission, the Equal Employment Opportunity Commission, ("EEOC") or any other public or private agency for claims arising from the November 4, 2009 proposal." Turner rejected appellant's demands in their entirety on November 13, 2009, stating,

(1)   Effective immediately, we are withdrawing our original proposal dated November 4, 2009.   The offer as stated to you is no longer available.
(2)   We reject your counterproposal in its entirety.
(3)   We request that you return to work immediately and fulfill the duties and responsibilities that have been assigned to you.   This includes assisting with the transition of your Human Resources responsibilities as previously discussed.   Your failure to report and/or fulfill your assigned duties may result in appropriate disciplinary action.
(4) Your current work schedule, salary and benefits remain unchanged.
(5)   We would appreciate your response in person or by email by November 17, 2009.

**{¶8}**   Appellant did not return to work but instead requested a 30 day unpaid leave of absence.   Chess granted appellant's request and, on November 19, 2009, announced to its employees that effective immediately, Lisa Dearden would be assuming all human resources responsibilities.   On December 24, 2009 appellant contacted the EEOC, scheduling an appointment for February 19, 2010.

**{¶9}**   Appellant continued to request medical leave in 30-day increments through the months of December 2009, January 2010 and February 2010. Because much of appellant's absence was in the busy tax season, Chess shifted many of her remaining tax-related responsibilities to other employees. Appellant advised Chess that she could not return to work until March 19, 2010, near the end of the tax season.   Chess terminated appellant's employment effective March 19, 2010, and Chess notified appellant of this decision via email on February 18, 2010.   The following day, appellant filed a charge of age discrimination with the EEOC.   On April 30, 2010, appellant filed the present action against appellees, asserting age discrimination in violation of R.C.

4112.14 and 4112.99, breach of express/implied contract, retaliatory discharge, wrongful discharge in violation of Ohio's public policy against age discrimination and fraudulent misrepresentation.

{¶10} On June 1, 2011, Chess filed a motion for summary judgment that the trial court granted for all claims and as to all defendants on August 29, 2011. Appellant brought the present appeal asserting that the trial court improperly granted summary judgment.

{¶11} Our review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.,* 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club,* 82 Ohio St.3d 367, 696 N.E.2d 201 (1998). The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

{¶12}    Although appellant presents only a single assignment of error, she challenges the trial court's grant of summary judgment as to each of the claims in her complaint.

## I.    Age Discrimination

{¶13}    Appellant argues that "[t]he trial court committed prejudicial error by granting the [appellee's] Motion for Summary Judgment finding that the facts do not support a conclusion of age discrimination, where direct evidence of age discrimination was presented."    Appellant brought her age-discrimination claim pursuant to R.C. 4112.02(A), which makes it an unlawful discriminatory practice for any employer to discharge an employee without just cause because of age.    To the extent that the rights set forth in R.C. Chapter 4112 are similar to those expressed in Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 et seq., we can apply federal precedent in interpreting R.C. Chapter 4112.    *Southworth v. N. Trust Sec., Inc.*, 195 Ohio App.3d 357, 2011-Ohio-3467, 960 N.E.2d 473, ¶ 2 (8th Dist.), citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981).

{¶14}    Age-discrimination claims can be proven in one of two ways: with direct evidence of discrimination or by establishing a prima facie case of discrimination.    *See Olive v. Columbia/HCA Healthcare Corp.*, 8th Dist. Nos. 75249 and 76349, 2000 WL

263261 (Mar. 9, 2000). Appellant asserts that summary judgment was improper under either method.

**{¶15}** To make a noncircumstantial case under the direct method of proof appellant had to present evidence that, if believed by a jury, would prove that Chess acted with discriminatory intent. *Nagle v. Calumet Park*, 554 F.3d 1106, 1114 (7th Cir.2009). "Direct evidence of discriminatory intent requires more than just conjecture — it should be evidence that can be interpreted as an acknowledgment of discriminatory intent" by Chess or its directors. *Southworth* at ¶ 4.

**{¶16}** Under this standard, "'only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age' will constitute direct evidence of discrimination." *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1359 (11th Cir.1999), quoting *Earley v. Champion Internatl. Corp.*, 907 F.2d 1077, 1081-1082 (11th Cir.1990). Direct evidence consists of "statements by a decisionmaker that directly reflect the alleged animus and bear squarely on the contested employment decision." *Febres v. Challenger Carib. Corp.*, 214 F.3d 57, 60-61 (1st Cir.2000).

**{¶17}** Appellant submits that the November 4, 2009 memo stating, "[a]t the end of April, 2010, you will retire from Chess" is direct evidence of age discrimination. Appellant argues that "[t]he Ohio Supreme Court has made it clear that an employer's decision to terminate an employee by proposing retirement is direct evidence of age discrimination." In support of this proposition, appellant relies almost solely on the

Supreme Court's holding in *Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501, 575 N.E.2d 439 (1991).

{¶18}    In *Kohmescher*, a 60 year old employee for Kroger was advised that his position was being eliminated as part of a reduction in force.   The employee brought a claim of age discrimination, presenting evidence that he was terminated because he was "eligible for [the] retirement window."   The trial court granted the defendant's motion for summary judgment and the court of appeals affirmed.   The Supreme Court, in overturning the decision, held that the plaintiff had presented direct evidence of age discrimination sufficient to overcome Kroger's motion for summary judgment.   The *Kohmescher* court held, "In recommending that plaintiff be selected for the RIF [reduction in its work force], [defendant] clearly indicated that the plaintiff was selected because he was eligible for [the] retirement window."   *Id.* at 504.

{¶19} Appellant argues that her case is "virtually identical to *Kohmescher*" and thus a similar result is warranted.   However, *Kohmescher* and the present case are distinguishable.   In *Kohmescher*, the Ohio Supreme Court found direct evidence of discrimination when Kroger admitted that "plaintiff was selected because he was 'eligible for (the) retirement window' " and the only reason that the plaintiff was eligible for early retirement was because of his age.   *Id.* at 504.   In short, in *Kohmescher*, the plaintiff showed a direct link between his age and Kroger's having selected him for discharge and did not rely merely on the use of the word "retirement."   Thus, even

under *Kohmescher* the word retirement by itself requires other evidence to survive a motion for summary judgment.

{¶20} In support of this finding, we rely on our decision in *Ramacciato v. Argo-Tech Corp.*, 8th Dist. No. 84557, 2005-Ohio-506. The plaintiff in *Ramacciato* was told he was due to be laid off and advised to accept an early retirement package. We held that summary judgment was warranted because Ramacciato failed to present evidence that showed that he was selected for termination because he was eligible for early retirement. It is clear from our holding in *Ramacciato* that the mere use of the word retirement by itself was not sufficient direct evidence to defeat a motion for summary judgment. *Id.* at ¶ 19. We reject the proposition that the use of the word "retire" by itself is sufficient to establish direct evidence of age discrimination. *See also Scott v. Potter*, 182 Fed. Appx. 521, 526 (6th Cir.2006) (holding that the statement "Why don't you retire and make everybody happy" did not constitute direct evidence of age discrimination); *Erickson v. Farmland Indus., Inc.,* 271 F.3d 718, 725 (8th Cir.2001) (Length of tenure, although it may correlate empirically with age, is not synonymous with age, and therefore the comment, "Twenty years is too long. You should have moved five years ago," was not direct evidence of age-based animus.) The relevant inquiry before this court is not *whether* an employee was offered retirement, but *why* an employee was offered retirement. Absent a showing of age-related reasons, plaintiff cannot satisfy the direct evidence standard.

{¶21} Without direct evidence of age discrimination, a plaintiff may defeat a motion for summary judgment by establishing a prima facie case of age discrimination.

{¶22} In order to establish a prima facie case of age discrimination in an employment discharge action, appellant must demonstrate that she: (1) was a member of a statutorily protected class; (2) was subject to adverse employment action; (3) was qualified for the position; and (4) that comparable, non-protected persons were treated more favorably than appellant. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501, 575 N.E.2d 439 (1991).

{¶23} In *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, the Supreme Court of Ohio modified the fourth prong of this test, by replacing it with "a requirement that the favored employee be substantially younger than the protected" individual. *Id*. at ¶ 19, 803 N.E.2d 781. The Supreme Court of Ohio declined to define "substantially younger." *Id*. at ¶ 22, 803 N.E.2d 781. Instead, the court noted that "[t]he term 'substantially younger' as applied to age discrimination in employment cases defies an absolute definition and is best determined after considering the particular circumstances of each case." *Id*. at ¶ 23, 803 N.E.2d 781.

{¶24} Once a plaintiff succeeds in establishing a prima facie case of discrimination, the burden shifts to the employer to rebut the presumption of

discrimination by articulating some legitimate, nondiscriminatory reason for its adverse action. Then, assuming the employer presents such reasons, the burden shifts back to the plaintiff to show that the purported reasons were a pretext for invidious discrimination. *Cittadini v. S.W. Gen. Health Sys.*, 8th Dist. No. 96254, 2011-Ohio-6464, ¶ 17.

{¶25} This case involves a reduction in force ("RIF") in which a new employee is not hired to replace the terminated employee and the terminated employee's duties were spread out among the remaining employees. *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690 (7th Cir.2006). Because an RIF necessarily results in the termination of otherwise qualified employees, we have held that "an employer's decision to discharge a qualified, older employee should not be considered 'inherently suspicious' because 'in a RIF, qualified employees are going to be discharged.'" *Ramacciato* at ¶ 29, quoting *Brocklehurst v. PPG Indus.*, 123 F.3d 890, 896 (6th Cir.1997).

{¶26} In RIF cases, the fourth prong of the prima facie test is modified to require the employee to offer additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled him out for impermissible reasons. *Ramacciato*, 8th Dist. No. 84557, 2005-Ohio-506, ¶ 29. This prong "may be established through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the reduction-in-force." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (C.A.10, 1988). "The purpose of the additional evidence

requirement is to ensure, in reduction of force cases, that the plaintiff has presented evidence to show that there is a chance the reduction in force is not the reason for the termination." *Southworth*, 195 Ohio App.3d 357, 2011-Ohio-3467, 960 N.E.2d 473, ¶ 25, quoting *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir.2006). The burden was thus on appellant to show that her termination resulted from impermissible considerations of her age.

{¶27} In the present case, there is no dispute as to the first three elements: appellant was over age 40; appellant was qualified for her job and, Chess terminated appellant's employment. The parties dispute the final element of the test as to whether appellant was replaced by a person not belonging to the protected class.

{¶28} Plaintiff initially disputes that the RIF framework is not the proper standard and this court should review the facts based on the standard four-part test. However, where the employer terminates an employee and does not obtain an employee to fill that position, there is logically a reduction in force. As was recognized in *Kundtz v. AT & T Solutions, Inc.,* 10th Dist. No. 05AP-1045, 2007-Ohio-1462:

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties. *Id.* at ¶ 24, citing *Barnes v. GenCorp. Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990).

{¶29} To demonstrate thatChess's termination of her was the product of age-based animus, appellant presents the following evidence: (1) an email in that the appellant opines that her termination was the product of age discrimination; (2) the financial stability of the company, and relative absence of prior reductions in force, indicating that Chess had no economic reason for appellant's termination; and (3) that Karsnak "trained" Lisa Dearden, age 35, who was assigned appellant's HR responsibilities.

{¶30} To begin, we will consider appellant's email. Appellant stated in an email on November 17, 2009,

> the November 9, 2009 memo has left me an emotional wreck and I am under doctor's care for what I am going through. I would have never thought that after 15 years of exemplary service to this company that I would be treated so harshly. The sentiment expressed in the memo is nothing less than age discrimination.

{¶31} We do not consider this evidence as tending to demonstrate discriminatory animus for two reasons. First, this email simply corroborates appellant's opinion that she was the victim of discrimination; it does not in any way corroborate, factually, the claim that Chess engaged in age discrimination. Secondly, rather than evidence of actual age discrimination, it appears to indicate that appellant was attempting to manufacture evidence of age discrimination, in the event of a later suit, rather than corroborating evidence of actual age discrimination. Six days earlier, appellant had sent her list of demands, which included $5,000 for attorney fees and, in exchange,

appellant would release Chess from any lawsuits stemming from the November 4, 2009 memorandum, including age discrimination.

{¶32} Second, Karsnak contends that the RIF was mere pretext for her termination, and presents evidence through which she maintains that the company was actually financially sound. Appellant's argument logically relies on the dubious proposition that a company must be operating at a loss in order to undertake a RIF. As evidence that the RIF was merely pretextual, appellant notes that the 2008 Fourth Quarter Report showed that there was sufficient profit to create an executive bonus pool of $200,000 and a Staff Bonus Pool of $60,000. Appellant also directs the court's attention to a December 14, 2009 company letter stating

> despite a difficult economic environment over the past year, we made great strides in many aspects of our business and achieved a level of profitability that allows us once again to pay bonuses * * *. We are confident that the combination of our talented team an improving economy will allow Chess to prosper in the year ahead.

{¶33} There is ample evidence in the record to support the finding that appellant's discharge was the result of business conditions and a pursuit of organizational efficiency. As previously discussed, although Chess remained profitable during the economic downturn, the record nonetheless reflects that Chess faced challenges including the loss of clients, a client bankruptcy and the departure of one of Chess's shareholders. In light of these conditions, Chess took a number of measures to improve efficiency and cut costs. The recorded minutes from a 2008 board of directors

meeting reflect Chess's consideration of "numerous cost savings measures that could improve profitability" including personnel changes.

{¶34}   Thus, evidence that Chess paid bonuses and expressed optimism in its annual report, demonstrates nothing in regards to appellant's claim of age discrimination. A company, in light of the circumstances, may be optimistic about the future while at the same time seeking to increase profitability.   Eliminating an employee's position and distributing her duties to other employees in an effort to increase efficiency is a legitimate and non-discriminatory aim.   *Mendlovic v. Life Line Screening of Am.*, *Ltd.*, 173 Ohio App.3d 46, 2007-Ohio-4674, 877 N.E.2d 377, ¶ 43 (8th Dist.).   We cannot, even accepting all of the facts presented by appellant, presume that a reduction in force absent absolute necessity tends to show discriminatory animus.

{¶35}   Next, appellant argues that she was required to train her 35 year old replacement and that this is evidence of age discrimination.   In early 2009, appellant asked for Chess to reduce her workload, but not her hours, because she believed it exceeded her capacity.   As a result, appellant began delegating portions of appellant's human resources work to Lisa Dearden, who had significant prior experience in human resources matters as well as the capacity to take on the additional work.   Appellant acknowledged support of this plan to reduce her work load in her deposition.   However, appellant argues that this delegation is sufficient additional evidence to satisfy the heightened fourth prong of the *McDonnell Douglas* standard.

**{¶36}** Contrary to appellant's argument, the record reflects that Chess asked Dearden to assume the human resources duties of the company in part due to appellant's request to have her workload lightened and because Dearden was more qualified than appellant to perform human resource tasks. Dearden has a college degree in business management with a concentration in human resources, has earned certification as a professional in human resources and had served for five years at other companies as a human resources manager. The mere fact that Dearden was younger than the appellant, cannot, in light of Dearden's qualifications, support the proposition that appellant was terminated for age-related reasons.

**{¶37}** Appellant directs this court to our recent decision in *Southworth*, in which we held that the plaintiff-employee had presented sufficient additional evidence, under the RIF framework, to establish the prima facie case for age discrimination. In *Southworth*, however, the plaintiff presented evidence showing that he was a better performer than a similarly situated younger employee. The plaintiff presented evidence that showed that he managed a "book of business" worth at least $100 million more than the comparable employee. Thus, in *Southworth*, where the plaintiff had presented evidence eliminating legitimate reasons for his termination while lesser-performing employees remained, we held the evidence sufficient to draw the inference that the employee had been terminated for impermissible reasons. Appellant, conversely, has not made a similar showing.

{¶38} The record before this court shows only appellant's own opinion as to her termination, Chess's desire to increase efficiency, the elimination of appellant's position, and the reassignment of portions of appellant's former human resources duties to someone who, though younger, was objectively more qualified for the work. We cannot conclude that the foregoing tends to show that appellant was singled out for impermissible reasons. Karsnak's failure to offer any evidence tending to show discriminatory intent by Chess precludes the showing of a prima facie case of age discrimination.

## II. Violation of Public Policy Claim

{¶39} In addition to appellant's arguments regarding age discrimination under R.C. 4112.14 and 4112.99, she argues that the trial court erred in granting summary judgment in favor of Chess on her claim of wrongful discharge in violation of public policy. The Ohio Supreme Court in *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, held that, "[a] common-law tort claim for wrongful discharge based on Ohio's public policy against age discrimination does not exist, because the remedies in R.C. Chapter 4112 provide complete relief for a statutory claim for age discrimination." *Id*. at syllabus.

{¶40} Appellant maintains that the holding announced in *Leininger* was overruled or cast into doubt by the Ohio Supreme Court's decision in *Meyer v. United Parcel Serv., Inc.*, 122 Ohio St.3d 104, 2009-Ohio-2463, 909 N.E.2d 106. Such is not

the case. *Meyer* dealt specifically with the interaction between R.C. 4112.02(N), 4112.14, and 4112.99 for the purpose of determining if an age-discrimination claim under R.C. 4112.99 can be foreclosed by way of arbitration pursuant to R.C. 4112.14(C). The Court clarified its holding in *Leininger* to correct an appellate court's misapplication of *Leininger* to the interplay amongst R.C. 4112.02(N), 4112.14, and 4112.99. *Leininger*'s holding that common-law tort claims for wrongful discharge based on Ohio's public policy against age discrimination do not exist was not disturbed by *Meyer*. Appellant's present argument is without merit.

### III. Breach of Express or Implied Contract

**{¶41}** Appellant next argues that the trial court erred in granting summary judgment in favor of appellees on her claim of breach of an express or implied contract. Appellant's complaint states, "[appellant] was both terminated in violation of Chess's employee express policies, terms, and conditions of employment concerning leave upon which Plaintiff justifiably relied." Karsnak argues that Chess breached an obligation contained within its employee manual with respect to leave. The policy reads:

> Chess Financial Corp. may grant an approved leave of absence for disability, pregnancy or personal reasons * * *. An approved leave of absence may be granted for up to 60 days. If necessary, you may request extensions in 30 (thirty) day increments for a maximum of one (1) year.

**{¶42}** To begin, by the policy's own terms, the granting of leave remained at Chess's discretion. Chess was under no contractual obligation to allow employees

leave for indefinite periods of time. Secondly, appellant admits that Chess never denied any of her multiple requests for leave. Chess granted all of Karsnak's requests for leave from November until March. There was no obligation created by the Employee Manual and even assuming, *arguendo,* that one existed, appellant has failed to demonstrate a breach.

**{¶43}** Karsnak then claims that a December 14, 2009 year-end review letter from Chess, outlining appellant's compensation and bonus for 2009, her job title and responsibilities in 2010 and her 2010 annual salary created a contractual obligation to maintain her employment throughout 2010. Chess's letter stated "[f]or 2010, you will serve as the Planning Associate with primary duties summarized in your job description. Your annual base salary for 2010 will be $32,100." Appellant's argument that an implied employment contract was created by the December 14, 2009 letter is without merit because the letter itself explicitly acknowledges appellant's "continued employment 'at will' by Chess Financial Corp." No implied employment contract can arise under such circumstances.

## IV. Retaliatory Discharge Claim

**{¶44}** In conjunction with the breach of an express or implied contract, appellant brought a claim for relief based on retaliatory discharge. It is unclear from the record whether these two theories were part and parcel of the same claim, or separate

grounds for relief filed under a single cause of action. To prevail in a retaliation claim, plaintiff must demonstrate (1) engagement in protected activity, (2) employer was aware of that activity, (3) employer took adverse action against the employee and (4) there is a causal connection between the protected activity and the adverse action. *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174. The claim contained within the plaintiff's complaint states,

> Furthermore, her termination also was in retaliation for Plaintiff's pursuit of her rights with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff sought the review of the EEOC in February, 2010, and was terminated thereafter by Defendants.

{¶45} The complaint, as pleaded, fails to create an issue of material fact. Plaintiff was notified of her termination on February 18, 2010. Plaintiff filed a complaint with the EEOC on the following day, February 19. That an event in the future could cause something in the past is a proposition that would challenge the space-time continuum. We dare not challenge the fabric of our existence. It is for this reason that we cannot find that the filing of the EEOC was the protected activity that caused Chess's termination of appellant.

{¶46} Despite being nowhere in the complaint, appellant argues that the alleged retaliatory termination was the result of having complained to the company that she was the victim of age discrimination.

{¶47} Chess, rightfully, objects to appellant's attempt to effectively amend her complaint in a brief in opposition to summary judgment and have her retaliatory

discharge claim heard on an alternate theory presented in opposition to a motion for summary judgment. To allow defendant to change horses mid-race, Chess argues, would prejudice the company. We agree.

{¶48} A plaintiff is required to set forth a short and plain statement showing she is entitled to relief. Civ.R. 8(A). The purpose of notice pleading is to notify a defendant of the allegations against him so that he might prepare a defense thereon. In her complaint, appellant narrowly limits its retaliatory discharge cause of action to the allegation that Chess terminated Karsnak in response to her filing a claim with the EEOC. By making the allegations in the complaint so specific, appellees were not put on notice that appellant would later claim that her termination resulted from her November 17, 2009 email complaining of age discrimination. Generally, a plaintiff cannot enlarge her claims during a defense to a summary judgment motion and is limited to the allegations of her pleading. *Wolk v. Paino*, 8th Dist. No. 94850, 2011-Ohio-1065. In a situation such as the present, we recognized in *Wolk* that,

> * * * appellants are limited to the allegations of their complaint. [Appellants] had the opportunity to amend their complaint and failed to do so in accordance with the civil rules. As such, appellees were not properly put on notice of these additional allegations. Therefore, in our review of the trial court's summary judgment determination, we will only consider [that contained within the complaint]. *Id.* at ¶ 38.

{¶49} For this reason, we limit our review of appellant's retaliatory discharge claim to that contained within the complaint.

**{¶50}**    Appellant argues that this court should consider her November 17, 2009 email complaint to Chess alleging age discrimination as the precursor to her filing an EEOC charge and that she can thereby satisfy the requisite causation element.    In support for this proposition, appellant relies upon *Denman v. Youngstown State Univ*., 545 F.Supp.2d 671 (N.D.Ohio 2008).

**{¶51}**    We find Denman to be unpersuasive in the present instance.    The plaintiff in *Denman* alleged that she was terminated in retaliation for writing a letter asserting discrimination and demanding her right to equal pay.    Unlike *Denman*, appellant's letter merely asserts the legal conclusion that she was a victim of age discrimination and demands severance terms in return for not filing a complaint or pursuing charges with the Ohio Civil Rights Commission and the EEOC.    The court in *Denman* found a triable issue of fact because due to a "temporal proximity" between Denman's letter and the non-renewal of Denman's contract a mere eleven days later. Furthermore, the *Denman* court based its decision on an admission by Denman's employer that Denman's letter, "was a 'triggering point' that caused him to seek advice about the legality of non-renewing Denman's contract."    Such facts do not exist in the present case rendering *Denman* inapposite.[1]

---

[1]We additionally note that unlike *Denman*, appellant was notified of Chess's intent to eliminate her position before appellant raised any allegation of age discrimination.

{¶52} Appellant's complaint stated that Chess terminated her "in retaliation for [her] pursuit of her rights with the Equal Employment Opportunity Commission ("EEOC")" rather than the theory that Chess terminated her for asserting to Chess that she was the victim of age discrimination and demanding severance terms in exchange for not asserting EEOC charges. Again, because we fail to comprehend how the February 19, 2010 activity could have caused the February 18, 2010 termination, we find that the appellant has failed to create a genuine issue of material fact.

## V.     Fraudulent Misrepresentation Claim

{¶53} Appellant's final claim for relief is for fraudulent misrepresentation. Appellant claims that Chess's statement to the EEOC that its termination of appellant was for financial reasons, rather than age-based animus, was a misrepresentation.

{¶54} A case for common law fraud requires proof of the following elements: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment and (6) a resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984).

{¶55}   After appellant's termination, Chess informed the EEOC that the reason

for Karsnak's termination was not age-discrimination but was due to economic concerns.

As noted above, though appellant disputes the necessity of her termination, there is no evidence to suggest that Chess was not seeking to increase efficiency. Moreover, even if this court were to assume that Chess had in fact misrepresented this fact, plaintiff cannot satisfy the fifth or sixth elements of the standard.

**{¶56}** The alleged misrepresentation occurred after appellant's termination and she fails to present any evidence of how she relied upon Chess's statement to the EEOC. Plaintiff has failed to plead facts that would suggest that she was harmed as a result of Chess's alleged false statement. Appellant claims that she was harmed in some broad, amorphous way by Chess's "subversion of the [EEOC] administrative process." Appellant cites no authority in support of her theory of how she was harmed by Chess's statement. Chess had already terminated appellant at the time of the statement and she has failed to demonstrate that she suffered any injury as a result of Chess's representation to the EEOC. We find appellant's arguments with respect to her fraudulent misrepresentation claim to be without merit.

**{¶57}** For the foregoing reasons appellant's assignment of error is overruled and the judgment of the trial court is affirmed.

It is ordered that appellees recover of said appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the

lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

---

EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR